BROWN & BIGELOW, Respondent, *v.* DANIEL W. BARD,
Appellant.

(County Court, Otsego County, July, 1909.)

Justices of the peace — Appeal and error — Review — Presumptions —
Disregard of trivial errors.

Sales: Delivery — Necessity and time for delivery — Time of delivery
— Where time is specified in contract: Waiver of defects by pur-
chaser — Acceptance as waiver; Specification of defects as waiver
of other objections.

Where a buyer's deliberate refusal to accept goods sold is put
on the sole ground that they were shipped too late, all other
grounds justifying a refusal to accept are waived if he had such
complete information as would have enabled him to state them.

Where the invoice of the goods, received after his refusal to
accept them on the ground that they were shipped too late, dis-
closed other grounds which would have justified his refusal to accept
the goods, he did not waive them.

A County Court, on appeal from a judgment of a justice of the
peace, will render judgment according to the justice of the case,
without regard to technical errors which do not affect the merits.

Where defendant contracted in writing for the purchase of cal-
endars with his name and certain advertising matter thereon for
distribution among his customers, and the goods, which by the
terms of the contract were to be shipped by freight and delivered
f. o. b. cars, on or about November first, were sent by express on
December eighth and delivered to defendant six days later; and it
appeared that it would have taken from eight to twenty-two days
to have carried the goods by freight, there was a failure to deliver
them in time, within the meaning of "on or about" November
first.

To constitute an acceptance of goods purchased, there must be
some act or conduct on the part of the buyer manifesting his inten-
tion to accept them unconditionally and in full performance of the
contract of sale.

APPEAL from a judgment of a Justice's Court rendered in
favor of plaintiff.

Harry J. Mosher, for plaintiff-respondent.

U. G. Welch, for defendant-appellant.

Kellogg, J. This is an appeal from a judgment rendered in Justice's Court on the 15th day of September, 1908, in favor of the plaintiff for the sum of $34.30 damages and $3.35 costs.

It appears that, on the 13th day of March, 1907, the plaintiff and defendant entered into a contract in writing, whereby the plaintiff agreed to sell and deliver to defendant a quantity of roll hangers and tubes and cardboard calendars, with envelopes, at and for the agreed price of $32.95, and that the same were to be shipped by freight and delivered f. o. b. cars, St. Paul, Minn., on or about the 1st day of November, 1907.

It was also provided in the contract that, "As it is impossible to print the exact quantity ordered, it is agreed that a shortage or excess in count, varying not more than 10 per cent of the quantity ordered, will be accepted as filling this contract; and at the option of Brown & Bigelow shipment may be made at an earlier date, providing goods are billed as above."

On the 8th day of December, 1907, the plaintiff claims to have delivered a package containing the goods in question to the Adams Express Co., at St. Paul, Minn., addressed to the defendant, and that thereafter, and on the fourteenth day of December, the agent of that company, at Edmeston, delivered a package from plaintiff to defendant, at the residence of defendant's father, where he was then residing. The defendant did not sign for the package at the time of the delivery, nor was he asked to sign for the same. The package was taken by the defendant into the house and never opened by him. On the same day, the defendant wrote to the plaintiff in substance that he had that morning received by express what he supposed was the goods ordered by him on the thirteenth of March, and stating that, if a reference should be made to the order, it had not been filled according to the terms. " I will now advise you," he says, " that I have not opened the package, and shall not do so until I hear from you in the matter, but I certainly shall not accept them at this late date at the prices I was to pay for them."

On the fifteenth day of December, the defendant received

an invoice from plaintiff in which he was charged for fifteen extra calendars, and also for the amount the freight would have been from St. Paul, Minn., to Edmeston, had the package been shipped and delivered by freight as called for by the terms of the contract.

An extended correspondence appears to have followed between the parties, which terminated January 11, 1908, and all of which was offered and received in evidence.

Upon receipt of the invoice defendant wrote plaintiff that they had put in fifteen extra size calendars, for which there was an additional charge, and which he considered another good reason for declining to accept the calendars on the original terms.

He then offered to send a check of ten dollars for the goods, provided the plaintiff advised him of the acceptance of such an offer on or before the twenty-seventh; otherwise, plaintiff was requested to advise him of what disposition to make of the calendars.

In the course of the correspondence, and on January 3, 1908, the defendant raised a further objection as to why he declined to accept the calendars, in that the same were shipped in a different manner than stipulated in the contract, and that, instead of being shipped by freight, they were shipped to him by express.

Concisely stated, it is the claim of the appellant, (1) that the goods were shipped too late; (2) that extra calendars were charged in the invoice, and the defendant charged with what the freight would have been; (3) that they were shipped in a different manner than stipulated in the contract.

It is also contended by the appellant that one of the witnesses for the plaintiff was permitted to answer the direct question, over objection, "When was the package delivered f. o. b. cars St. Paul, Minn.?"; that the same witness was also permitted to state, "the usual time it takes a package to be transferred by freight from St. Paul to Edmeston, or some station near Edmeston;" "What the freight charges for shipping such a package as the one in question from St. Paul to Edmeston were," without having first shown that such information was within the knowledge of the witness;

"that full express charges were paid, and the consignee charged with what the freight charges would have been;" "How much the extra fifteen calendars shipped amounted to, according to the terms of the contract, and that they were charged in the invoice at the same rate the defendant agreed to pay for the calendars mentioned in the order."

The plaintiff, in all the correspondence on its part, insisted that the order called for delivery " on or about " November 1; that the calendars had apparently reached their destination in good time; that the order was filled as per contract, and that it should expect payment of the bill as rendered.

The respondent also argues that the package was accepted by the defendant and put into his house, never returned to the express company or to the plaintiff, and that it was still in the defendant's possession at the time of the trial; that in none of his letters did he absolutely refuse to accept the package; that he was endeavoring to get the goods at a less price than called for by the contract, and was apparently endeavoring to delay the delivery; that, on December 14, when the defendant refused to accept the goods upon the sole ground that they were shipped too late, he had thus formulated his sole objection, and thereby waived all others to the acceptance of the goods; citing Hess v. Kaufherr, 128 App. Div. 526; Littlejohn v. Shaw, 159 N. Y. 188, and Gould v. Banks, 8 Wend. 562.

If the first objection was deliberately stated, the above, no doubt, is the correct rule; at least, if he had such complete information as would have enabled him to state his other objections. But the invoice was not received until the day following the fourteenth of December, so that the objection to several of the items therein could not have been made prior to the time it was received.

It was also urged that the exact time these goods were to be delivered was not of the essence of this contract, and that, if such had been the case, the contract, instead of reading " on or about " November 1, 1907, the parties would have stipulated that the goods ought to be in the buyer's hands not later than November 1, 1907; and that the nature of the

goods bought, and of the use of the word "about," and the
meaning of shipment by freight to be delivered at St. Paul,
proved that the intent of the parties was to have the cal-
endars in the buyer's hands in time for the delivery among
his customers at the commencement of the year 1908, and
that they were in his hands seventeen days before the com-
mencement of the year; that the questions of whether the
delivery was in time, as well as place of delivery, quantity
delivered, and tender of the goods, were all submitted to the
trial court, as was also the question as to whether the plain-
tiff had proved a substantial compliance with the terms of
the contract; and, as the same were questions of fact, the
verdict of the trial court must be regarded as controlling
upon these issues.

It is the duty of an appellate court to render judgment
according to the justice of the case, without regard to techni-
cal errors which do not affect the merits. No decision of a
lower court should be reversed, or a verdict set aside on a
mere technicality, when it is evident that substantial justice
has been done. The existence of mere legal loopholes should
never be permitted to delay a just and proper administration
of the law.

The justice disregarded the item for the extra calendars,
and rendered judgment for the purchase price of the goods,
and for the amount which it was claimed the freight would
have been. As this case must turn upon the construction of
the contract of sale and the meaning of the words "on or
about" as used therein with reference to the time the calen-
dars were tendered for delivery, it is hardly necessary to
consider whether the errors in the admission of evidence on
the trial were of sufficient importance to reverse the judg-
ment, or the fact that the goods were tendered to the defend-
ant by express instead of by freight as called for by the
terms of the contract. Assuming there had been a timely
delivery to the defendant of the goods, the question here as
to the right of the defendant to refuse to receive them, upon
the sole ground that they were sent by express instead of
by freight, would hardly be of sufficient importance to re-
verse the judgment.

The facts as presented here may be clearly distinguished from the case of International Money Box Co. v. Southern Trust & D. Co., 93 App. Div. 309, which involved a contract for the sale of merchandise f. o. b. New York city, where it was held that a delivery to a carrier with the direction to deliver it to the vendee at Baltimore, Md. and collect charges is not compliance therewith.

The defendant, however, having rejected the calendars upon the ground that the delivery was too late, I am of the opinion that the attempted delivery by express was not sufficient to pass the title.

It appears from the evidence that, at the time the contract was made and for some time prior thereto, the defendant was an insurance agent at Edmeston, N. Y., a village containing about seven hundred inhabitants; that he also transacted business in the vicinity of that village and in several adjoining towns which were six or seven miles distant therefrom.

The name of the defendant and certain advertising matter were printed upon the calendars, and they were procured, he says, for advertising purposes and for distribution among his customers.

Evidence received in the case also shows that it would take a package from eight to twenty-two days to go by freight from St. Paul to Edmeston.

The primary object in the construction of contracts is (1) to arrive at the intention of the parties, and (2) to ascertain, if possible, as to whether there has been such a fair and honorable completion of the same, by either one or more of the parties in interest, as to entitle a party claiming to have fulfilled to receive the compensation or benefits to be derived thereunder.

What was intended by the parties when it was stated in this contract that the calendars were to be delivered at St. Paul, f. o. b. cars "on or about" November 1, 1907? Was there such a reasonable compliance with the terms thereof from the facts here presented as entitled the plaintiff to recover for the purchase price of the same? Or was there such a failure on the part of the plaintiff as justified the

defendant in refusing to accept and pay for the goods? In other words, was the shipment by express of the calendars from St. Paul on the eighth, and their arrival on the 14th of December, at Edmeston, " on or about " November 1?

A legal definition of the words " on or about " as used in this contract has never been made by the courts of this or any other State.

The expression " on or about " a certain date is held to be just as consistent with a day or two after the date as before. Payne v. State Land Office, 56 Mich. 245, 23 N. W. Rep. 491.

The term " on or about " the first day of July, though somewhat indefinite and uncertain, will not be held to extend as far back as May twenty-fourth. Santa Monica Milling Co. v. Hege, 48 Pac. (Cal.) 69-71.

Wilson v. Flickinger Co., 76 App. Div. 399, was an action to recover for the purchase price of glass jars to be delivered "on or about " the 1st day of July, 1906, but not shipped until the eleventh of August following. It was therein held that the defendant might show under a general denial that he canceled the contract before the goods were shipped, to wit., August 11th following.

The goods were subsequently rejected because of an alleged failure to come up to the requirements of the contract in that they were not of equal quality of the sample. It was also held that, if there was no oral modification of it regarding the time of delivery, the plaintiff would not be entitled to recover, and that, without such question, the plaintiff had no case for the jury. Neither was it error to refuse to charge that the provision of the contract as to the time of the delivery was waived by the defendant taking the goods from the cars and receiving them.

In Hawes v. Lawrence, 4 N. Y. 345, it was held that the words " on or about " as used in that contract amount to nothing more than a mere representation, and were not words of warranty.

Taking into consideration the occupation of the defendant, the territory in which he transacted his business, the purpose for which he procured the calendars, and that they were of

little use to him if not delivered in time for distribution among his customers, I am of the opinion that time was of the essence of the contract, and that the term " on or about " November first, as used therein, did not mean December eighth or fourteenth, nor was there such a fulfillment of its terms on the part of the plaintiff as entitled it to recover for the purchase price of the calendars under all of the facts and circumstances in this case.

The defendant appears to have been prompt in notifying plaintiff of his refusal to accept the calendars under the terms of the contract, and continued so to do until the correspondence ceased. It is elementary that acceptance is the receipt of anything offered by another, with the intention to retain it, indicated by some act sufficient for that purpose, as when the seller gives the buyer the actual control of the goods, and the buyer accepts. There must be, however, some act or conduct on the buyer's part manifesting his intention to accept the goods, unconditionally, and in the full performance of the contract of sale.

I am not able to find any such acceptance in the defendant's letters, or in the correspondence which took place between the parties.

For the reasons stated, I have reached the conclusion that the judgment rendered by the justice herein must be reversed, with costs.

Judgment reversed, with costs.