# CHARLESTON.

O. A. MULLINS v. JOHN FARRIS *et als.*

(No. 5366)

Submitted October 27, 1925.    Decided December 8, 1925.

SALES—*When Title to Goods Sold to be Shipped by Common Carrier Passes to Buyer Stated; Right of Action For Purchase Price Vests in Seller on Delivery to Carrier.*

> If goods are sold to be shipped by a common carrier, the general rule is that the title passes to the buyer and a right of action for the purchase price vests in the seller upon delivery to the carrier, consigned to the purchaser, of merchandise of the kind, quality and quantity specified in the contract, properly prepared for shipment.

> (Sales, 35 Cyc. pp. 316, .528 [Anno.].)

> (NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Kanawha County.

Action by O. A. Mullins against John Farris and others. Judgment for plaintiff, and defendants Harvey Farris and another bring error.

*Affirmed.*

*B. J. Pettigrew,* for plaintiffs in error.
*Davis & Painter* and *Joe L. Silverstein,* for defendant in error.

LITZ, JUDGE:

The defendants complain of verdict and judgment in favor of the plaintiff in the sum of $1168.00 for the purchase price of merchandise sold and delivered by the latter to the former.

June 23, 1923, plaintiff shipped from Trezevant, Tennessee, to the defendants at Charleston, West Virginia, a carload of green beans containing 702 bushel hampers, which he had previously sold to them through Whitehurst & Company, merchandise brokers of Charleston. The beans on arrival at

Charleston, June 28th, were rejected by the defendants on the ground that part of them were of inferior quality and others affected by mould. The car containing the beans remained on the defendants' siding until they had completely spoiled, and were then disposed of by the railroad company. This action in assumpsit was brought for the purchase price of $1.55 per hamper.

Upon the trial the plaintiff introduced the testimony of numerous witnesses to the effect that the beans were of good quality, properly packed, and in first class condition when delivered to the carrier. The defendants, on the other hand, adduced proof tending to show an inspection of at least forty hampers after the shipment reached Charleston, revealing some rusty and immature beans, and small quantities in part of the containers slightly moulded.

The defendants make the general claim that the beans did not comply with the contract, either in quality or quantity. Under the evidence, however, these questions were proper for jury determination. Moreover, the defendants did not question the quantity at the time of rejecting the goods. When refusal to accept goods purchased is based upon a particular objection, formally and deliberately stated, all other objections are deemed waived. *Linger et al.* v. *Wilson*, 73 W. Va. 669.

Specific complaint is directed to the action of the court in granting the three several instructions offered by the plaintiff and refusing two of those tendered by the defendants. By plaintiff's Instruction No. 1 the jury were told that if they believed from the evidence the defendants, through Whitehurst & Company, purchased from the plaintiff the carload of beans containing 702 bushel hampers, and that they were in good, merchantable and marketable condition at the time of delivery to the carrier in Tennessee, and substantially complied with defendants' order as to quantity and quality, the plaintiff was entitled to recover the contract price.

The jury were also informed by plaintiff's instruction No. 2 that if the beans, when delivered to the carrier, consigned to the defendants, were in good, merchantable and marketable condition and substantially complied with the defendants'

order in quality and quantity, the defendants were liable for the contract price, although some of the beans may have been unmarketable on arrival at Charleston.

Plaintiff's instruction No. 3 presents the proposition that if the beans, when loaded on the car of the railroad company in Tennessee "were of the kind, quality and quantity which the defendants offered to buy" the title thereto became vested in defendants upon such delivery to the carrier.

These instructions fairly state the law of the case and were proper for the jury's guidance. *Vaccaro Bros.* v. *Farris,* 92 W. Va. 655.

Defendants' instruction No. 5, refused, would have told the jury that if, under the terms of purchase, the defendants were given the right to inspect the beans before acepting them, and upon making such inspection, their quality and quantity were not as represented, then the defendants were entitled to reject them. The instruction was properly refused. There is no evidence tending to support the theory that the defendants were given the right of inspection before accepting the goods.

Defendants' instruction No. 6, refused, states that the plaintiff was required to deliver to the defendants "beans substantially as agreed upon in the first instance, and if the jury believes that a substantial difference existed in the quality of said beans, then no duty rested upon the defendants to accept them upon delivery". This instruction was covered by others given for the defendants.

It seems that the green bean market at Charleston had weakened under the influx of locally grown beans, which may in part account for the prompt rejection of the shipment by the defendants.

The judgment of the circuit court will be

*Affirmed.*