E. L. RICE & COMPANY *v.* E. L. ROBERTS *et al.*

(No. 7655)

Submitted January 16, 1934. Decided January 23, 1934.

*Hubard & Bacon,* for plaintiffs in error.
*A. L. Russell* and *R. J. Thrift, Jr.,* for defendant in error.

MAXWELL, JUDGE:

This is a writ of error to a judgment for $250.00 in favor of the plaintiff and against the defendant upon a directed verdict in the circuit court of Fayette County.

The plaintiff, E. L. Rice & Company, of Detroit, Michigan, sells jewelry at wholesale through the instrumentality of traveling salesmen. The defendants, E. L. Roberts and H. A. Carper, conduct a retail store under the name of the Men's Shop, at Mount Hope, in said county. Through the solicitation of W. H. Duvall, a representative of the plaintiff, an order for a quantity of jewelry was placed by the defendants with the plaintiff March 24, 1932. On the first of April, the jewelry thus ordered, and a showcase for the display of the same, were delivered to the defendants at Mount Hope. On the same day, the defendants declined to accept the articles and returned the showcase to Columbus, Ohio, whence it had been shipped to them on order of the plaintiff, and returned the jewelry to the plaintiff at Detroit. Immediately, the defendant Carper with the approval of defendant Roberts, wrote the plaintiff a letter in reference to the transaction. In this letter, the defendants said: "We are returning this shipment as conditions are such at this time we do not feel that we can sell enough of this merchandise to be able to pay you." Further emphasis was laid on the bad business conditions then existing. No mention was made of any other matter.

Under date of April 4th, the plaintiff replied to the above letter and stated its refusal to cancel the contract or to accept return of the merchandise; further, that the goods had not been accepted by the plaintiff when tendered by the express company pursuant to the shipment back from Mount Hope to Detroit, but had been left in the custody of the express company. After receiving this letter, the defendants, on the 11th of April, wrote the plaintiff another letter, the defendant Roberts dictating the letter. In this communication there is set out in detail the conduct of salesman Duvall in obtaining the order for the merchandise. This conduct may have amounted to fraud. But, even so, the defendants, after setting it forth in the letter, did not undertake to repudiate the contract on that ground. The letter proceeds: "We do not want

to appear unfair in this matter, * * * we are not doing any business to speak of on account of the mines not operating and the fact of the matter is that unless conditions improve (which we see no chance for improvement soon) we could not possible pay for the merchandise in question. If you still feel that we should accept the merchandise and want to take chances on getting your money you may advise the express company to return the shipment. But we want to advise you now that we do not know when we will be able to pay you, for unless business conditions improve soon we are afraid that we will not be in business very long." Under date of April 16th, the plaintiff replied by letter definitely refusing to cancel the contract and suggesting to the defendants that they get in touch with the express company and have the goods returned to them, and calling the defendants' attention to the fact that they could pay for the merchandise in installments of $25.00 per month. The defendants did not request the express company to re-deliver the jewelry to them. Evidently the jewelry is still in the custody of the express company.

The facts are against the defendants. In the correspondence their effort was to avoid the contract because business conditions were bad owing to the economic and industrial depression. In the first letter they wrote the plaintiff no mention was made of fraudulent conduct on the part of plaintiff's salesman in securing the order for the jewelry, and in the second letter, where the conduct of the salesman is recited, it is not relied on as a reason or justification for cancellation of the contract. Bad business conditions do not afford legal justification for the cancellation of contracts. And even if the defendants in their second letter had relied specifically upon the alleged fraudulent conduct of the plaintiff's salesman in procuring the order for the jewelry, that defense would be unavailing to them because they had first undertaken to repudiate the contract on another ground. The rule is well settled that "when refusal to accept goods purchased is based solely upon a particular objection, formally and deliberately stated, all other objections are deemed waived." *Linger* v. *Wilson,* 73 W. Va. 669, 80 S. E. 1108; *United Fruit Co.* v. *Bisese,* 25 Pa. Sup. Ct. 170; *Littlejohn* v. *Shaw,* 159 N. Y. 188, 53 N. E. 810; *Polson Logging Co.* v. *Neumeyer,* 229 Fed. 705; 24 Am. & Eng. Ency. of Law (2nd Ed.), p. 1092.

Reaching the conclusion that the case was correctly decided by the trial court, we affirm the judgment.

*Affirmed.*